# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL JASMIN,<br><br>         Plaintiff,<br><br>     v.<br><br>SANTA MONICA POLICE<br>DEPARTMENT, et al.,<br><br>         Defendants. | Case No. CV 16-6999-FMO (JEM)<br><br>MEMORANDUM AND ORDER<br>DISMISSING COMPLAINT WITH LEAVE<br>TO AMEND |

Krystal Jasmin ("Plaintiff"), proceeding pro se and in forma pauperis, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

**SCREENING STANDARDS**

In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for: (1) failure to state a cognizable legal theory; or (2) failure to allege sufficient facts under a

cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Unless it is clear that the deficiencies in a complaint cannot be cured, pro se litigants are generally entitled to a notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. Id. at 623. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be

dismissed without leave to amend. Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**

## ALLEGATIONS OF THE COMPLAINT

Plaintiff's allegations include the following:[1]

Plaintiff is the mother of three children: M.J., age 11; K.J., age 9; and K.J., age 8.[2] On or about September 19, 2014, Plaintiff and the children were arrested at their home by the Santa Monica Police Department ("SMPD") without a warrant and without any crime having been committed. (Complaint at 4.)

Five SMPD officers were present at Plaintiff's residence, with their weapons visible. They secured the entire front of the property from outside and inside the gate. "No Trespassing" signs are clearly visible. (Id. at 4-5.)

SMPD failed to investigate and uncover evidence to establish that a crime had been committed. Plaintiff requested a breathalyzer, but the police refused to administer one. (Id. at 6.)

The charges brought by SMPD stemming from the false arrest were dropped and dismissed by the Santa Monica City Attorney's office two days after Plaintiff was released from police custody and five days after the false arrest. Plaintiff was never brought before a judge prior to her release. (Id. at 6.)

The children were removed from the care of an extended family member and neighbor, Dana Rogers, who was present in the enclosed curtilage of the private residence at the time of the false arrest, and the children were taken into police custody without just

---

[1] The Court recites Plaintiff's allegations herein, to the extent they appear to be tied to one of the eleven enumerated legal claims set forth at pages 21-34 the Complaint. Other allegations, to the extent they are not tied to any articulated legal claim, are not generally recited herein.

[2] Plaintiff references numerous exhibits, but none have been submitted to the Court.

cause. The children were not harmed prior to their arrest and there was no emergency or necessity to detain the children when Rogers was present and willing to take custody of the children. (Id.)

The children were further detained by the Department of Children and Family Services ("DCFS"), even though there was no abuse or neglect. (Id. at 6-7.)

This pattern of behavior established a conspiracy between governmental agencies to deprive Plaintiff of her rights in retaliation for her exercising her constitutional rights. (Id. at 7.)

Despite several requests for a lawyer and a phone call, Plaintiff was not allowed to make any calls until 5 hours after her arrest. By that time, police already had secured the presence of a social worker from DCFS even though Plaintiff was entitled to make arrangements for her children within three hours of her arrest. Plaintiff was unaware that the police had intended to charge or had actually charged any crimes related to the children or they had contacted DCFS. (Id.)

Several times while Plaintiff was in the cell, Officer Greer and another officer came to the window of the cell and taunted Plaintiff. At approximately 2:00 a.m. on Saturday, after being in custody for five hours, Greer informed Plaintiff that she was going to be booked and questioned by DCFS at the same time. This was the first time Plaintiff was informed of DCFS involvement. (Id.)

When Plaintiff asked the DCFS agent why her mother could not come and get the children, the agent replied that DCFS would be taking custody of the children and he would try to contact Plaintiff's mother. Plaintiff informed the agent that her children were not abused, but the agent said that SMPD had called DCFS, so they were involved. (Id. at 8.)

The DCFS agent transported the children to a location that was more than a 3-hour bus ride and a $70 taxi ride away, which made it hard for Plaintiff to see her children. (Id. at 9.)

On Monday, September 22, 2014, three days after her arrest, SMPD had Plaintiff sign a citation, which stated that she promised to appear in court on October 22, 2014. (Id.)

4

On the same day, DCFS social workers J. Bright and Stephanie Rush "committed tortious acts of malicious misconduct, and perjured themselves in their signed testimony as they entered a petition to initiate a judicial proceeding in which they alleged 2 false allegations which were subsequently found to be unfounded by the presiding judge, and which they never had any evidence to support." (Id.)

The judge in the dependency proceeding dismissed the original petition for lack of jurisdiction, but DCFS agents entered additional "untrue" evidence "causing fraudulent evidence to be relied on." (Id.)

At the children's court appearance, Plaintiff submitted two letters "that confirmed her events of the story" from one of the children's teachers and from neighbor and family member Dana Rogers. Rogers stated that Plaintiff was arrested at her home and not at the school as the police had reported, SMPD denied Rogers access to the children and removed them when she had permission to care for them, and denied her access to get contact information for other relatives. (Id. at 10.)

Plaintiff also was "threatened" by the judge on September 24, 2014, that if she wanted to have a speedy trial, it was likely the court would not find cause to reunite the family. The trial was set for October 16, 2014. "As of today . . . the family has not been reunited." (Id.)

On October 8, 2014, DCFS Investigator Jamie Hein, after obtaining the attendance records from the children's school, continued the investigation. Hein "made claims that were inaccurate and false." When Plaintiff told Hein she would bring her children to court to testify, Hein said if the children contradicted her they would be adopted. DCFS later attempted to have the children adopted. (Id.)

When Plaintiff "asserted her rights and refused to be intimidated," Hein threatened to add new and false allegations against Plaintiff. The new allegations did not demonstrate that the children were abused or neglected and "did not bring the family under the definition of the statute as it was alleged." The original allegations already had been proven false, "and the judge had already divulged she was not inclined to sustain them." This illustrates

5

that Judge Blackshaw knew she lacked jurisdiction and that she was complicit in the conspiracy with DCFS. Blackshaw was complicit in the conspiracy by refusing to appoint competent counsel for Plaintiff, refusing to acknowledge laws, rights, and the Plaintiff's factual innocense, and denying Plaintiff due process and equal protection under the law. (Id. at 11.)

As a result of DCFS's misconduct and the court's unlawful actions, Plaintiff was "accused under a law for an action that was not related to the law, did not conform to the language in the statute which illustrates what determines guilt under the statute, was not the intention of the law, and could not have been presented as a credible or lawful petition or allegation . . . ." (Id. at 11-12.)

On October 24, 2014, Hein took the stand and admitted that Plaintiff's children were never harmed, were adequately taken care of by Plaintiff, and that there was no evidence to support the original petition. She admitted she had no evidence to support the new allegation. Blackshaw admitted Plaintiff was an attentive parent, but she refused to return the children. (Id. at 13.)

In November 2014, Plaintiff's efforts "to gather the evidence being used against her were blocked by parties in SMPD and DCFS." SMPD employees Rose and Butts conspired to deny Plaintiff a public record, the police report, even though it had been the basis of a published newspaper article. (Id.)

Based on the foregoing allegations, Plaintiff asserts the following claims: (1) false arrest and false imprisonment against SMPD Officers Cochran, Jauregui, Glaser, Garcia, and Diaz in violation of the Fourth Amendment, based on the September 19, 2014, incident (Claims 1, 4, 5) (id. at 21-22, 26-27, 27-28); (2) violation of her rights to due process by Officers Cochran, Jauregui, Glaser, Garcia, and Diaz when they "decided to act without a warrant, probable cause or exigency to investigate what they claim to be a child abuse suspicion report at the plaintiff's home, and while she did not consent, they denied due process to the plaintiff" (Claim 2) (id. at 24); (3) excessive force and unlawful search and seizure against Officers Cochran, Jauregui, Glaser, Garcia, and Diaz based on the initial

contact and questioning at the property without a warrant or consent (Claim 3) (id. at 24-26); (4) conspiracy to deprive Plaintiff of her civil rights against Officers Cochran, Jauregui, Glaser, Garcia, and Diaz based on the false arrest, denial of due process, warrantless search, and denial of equal protection under the law (Claim 6) (id. at 28-29); (5) interference in private life, in violation of the Fourth, Fifth, and Fourteenth Amendments by Officers Cochran, Jauregui, Glaser, Garcia, and Diaz denying Plaintiff "the right to parent her children . . . " (Claim 7) (id. at 29-30); (6) malicious prosecution against Defendants Cochran, Jauregui, Glaser, Garcia, and Diaz based on their false arrest of Plaintiff (Claim 8) (id. at 30-31); (7) unlawful detention by DCFS agent Bright based on the removal of Plaintiff's children from her custody, in violation of DCFS policies and procedures and the law (Claim 9) (id. at 31-32); (8) entry of false evidence into a judicial proceeding against DCFS agents Bright and Rush based on their filing of a petition in a dependency proceeding in state court, which led to Plaintiff losing custody of her children (Claim 10) (id. at 32-33); and (9) DCFS entry of false evidence in a judicial proceeding, unlawful detention and witness intimidation against DCFS agent Hein, based on false allegations made during the dependency proceedings (Claim 11) (id. at 33-34).

Plaintiff seeks damages and injunctive relief. (Id. at 16-17.)

## DISCUSSION

### I. PLAINTIFF MUST NAME ALL DEFENDANTS IN THE CAPTION.

The caption of the Complaint lists the SMPD, DCFS, Officer Cochran, and CSW Jeweutt Bright as Defendants. (Complaint at 1.) In the body of the Complaint, however, Plaintiff names Officers Cochran, Jauregui, Glaser, Garcia, and Diaz and DCFS Social Workers Jeweutt Bright and Jamie Hein as Defendants.

The individuals named as "defendants" only in the body of the Complaint have not been presented properly as parties, and the Court does not recognize them as defendants in this action. If Plaintiff files an amended complaint, she **must include in the caption the names of each defendant against whom she is asserting a claim**. See Fed. R. Civ. P. 10(a); Local Rule 11-3.8(d); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir.

1992) (dismissing action for refusal to comply with court orders to name defendants in the caption). The Court will not order the United States Marshal to serve the amended complaint on any named defendant not identified in the caption.

## II. THE COMPLAINT FAILS TO COMPLY WITH FED. R. CIV. P. 8.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (internal citation omitted). To comply with Rule 8, a plaintiff should set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996). Conclusory allegations are insufficient. See Iqbal, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks and citation omitted).

Plaintiff's Complaint does not comply with the standards of Rule 8. It is confusing, convoluted, and fails to set forth the facts in a comprehensible manner. The Complaint fails to clearly articulate the facts giving rise to each claim and the specific Defendants Plaintiff believes are liable for each of those claims. Plaintiff does not state sufficient facts regarding the sequence of events leading up to her arrest, the arrest itself, the subsequent removal of the children, the charges on which Plaintiff was detained, the specific details of the dependency proceedings, and the current status of those proceedings. Plaintiff repeatedly references numerous exhibits, but there are none attached.

Plaintiff repeatedly makes conclusory statements, without sufficient factual support. For example, Plaintiff alleges that Bright and Rush perjured themselves and made false allegations in the dependency proceedings, but Plaintiff never says what those allegations were. (See Complaint at 9.) Plaintiff alleges that DCFS agents introduced untrue and fraudulent evidence in the dependency proceedings, but Plaintiff never states what that

evidence was. (See id.) These conclusory statements, which are scattered throughout the Complaint, are insufficient under Rule 8.

The Complaint, in its current state, does not provide each defendant with fair notice of the bases for her claims against them, in violation of Rule 8. See Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011); see also American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) ("[A] pro se litigant is not excused from knowing the most basic pleading requirements.").

In sum, Plaintiff's Complaint is subject to dismissal under Rule 8. If Plaintiff chooses to file an amended complaint, she should set forth additional material facts and clearly establish how those facts relate to each legal claim. Plaintiff should attach all referenced exhibits.

## III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SANTA MONICA POLICE DEPARTMENT, THE LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, OR THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Plaintiff has named the SMPD and DCFS as Defendants. She also purports to sue various SMPD and DCFS officials in their official capacities.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Moreover, a local governmental entity, such as the SMPD or DCFS, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978). Thus, "[i]n order to hold [a local government defendant] liable under § 1983, [Plaintiff] must show (1) that he possessed a constitutional right of which he was deprived; (2) that the [local government entity] had a policy; (3) that the policy amounts to deliberate indifference to [Plaintiff's] constitutional right; and (4) that the policy is

9

the 'moving force behind the constitutional violation.'" Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations and internal quotation marks omitted); Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). "There also must be a 'direct causal link' between the policy or custom and the injury, and [Plaintiff] must be able to demonstrate that the injury resulted from a 'permanent and well settled practice.'" Anderson, 451 F.3d at 1070 (citation omitted); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en banc).

Here, Plaintiff has failed to identify any policy statements, regulations, officially adopted or promulgated decisions, customs, or practices by which any Defendant allegedly inflicted the injuries about which Plaintiff is complaining. The allegations of the Complaint are insufficient to state a claim upon which relief may be granted against SMPD, DCFS, or the individual Defendants in their official capacities.

If Plaintiff chooses to file an amended complaint, she should not sue SMPD, DCFS, or the individual Defendants in their official capacities (only in their individual capacities) unless she can allege specific facts demonstrating that the SMPD or DCFS has a policy, regulation, custom, or practice by which any Defendant inflicted the injuries about which Plaintiff is complaining. Conclusory or formulaic recitation of the elements of a Monell claim would be insufficient. See Iqbal, 556 U.S. at 678-79 (legal conclusions must be supported by factual allegations); Dougherty, 654 F.3d at 900 (finding that plaintiff's conclusory allegations "lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by Twombly.").

IV. **PLAINTIFF HAS FAILED TO STATE A CLAIM BASED ON THE CHILD CUSTODY PROCEEDINGS.**

Several of Plaintiff's claims directly challenge state court decisions relating to the custody of her children. (See Claims 7, 9, 10, 11.) "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." Thompson v. Thompson, 798 F.2d 1547, 1558 (9th Cir. 1986). Moreover, while federal courts have an obligation to exercise jurisdiction where it

exists, particularly in civil rights cases, abstention may be required under the decision in Younger v. Harris, 401 U.S. 37 (1971), when there are ongoing state judicial proceedings implicating important state interests and there is adequate opportunity in the state proceedings to raise federal questions. Confederated Salish v. Simonich, 29 F.3d 1398, 1405 (9th Cir. 1994). State judicial proceedings involving domestic relations clearly implicate important state interests. Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (holding that the domestic relations exception to federal subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony and child custody decrees); Coats v. Woods, 819 F.2d 236, 237 (9th Cir. 1987) (affirming abstention where the case raised constitutional issues but was "at its core a child custody dispute"); Peterson v. Babbitt, 708 F.2d 465, 466 (9th Cir. 1983) (finding abstention appropriate despite the presence of constitutional issues where the plaintiff sought visitation with children who were wards of the state court).

      Furthermore, under the Rooker-Feldman doctrine, federal district courts lack jurisdiction to review alleged errors in state court decisions. Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (holding that review of state court determinations can be obtained only in the United States Supreme Court). The doctrine applies to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "The purpose of the doctrine is to protect state judgments from collateral federal attack." Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001). Pursuant to this doctrine, a federal district court is prohibited from exercising subject matter jurisdiction over a suit that is "a de facto appeal" from a state court judgment. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). A federal district court may not examine claims that are inextricably intertwined with state court decisions, "even where the party does not directly challenge the merits of the state court's decision but rather brings an

indirect challenge based on constitutional principles." Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n.4 (9th Cir. 2003); see also Ignacio v. Judges of U.S. Court of Appeals, 453 F.3d 1160, 1165–66 (9th Cir. 2006) (affirming district court's dismissal of the case "because the complaint is nothing more than another attack on the California superior court's determination in [plaintiff's] domestic case").

Finally, "[r]es judicata bars a suit when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980). Res judicata is applicable "when there is '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" ProShipLine Inc., 609 F.3d at 968 (quoting Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002)).

Here, Plaintiff alleges multiple improprieties related to the removal of the children from her custody by DCFS officials and the subsequent state court determination to sustain the removal. In Claims 7, 9, 10, and 11, Plaintiff directly challenges the removal of the children from her custody. Based on the facts alleged, it appears that those claims are not cognizable in this civil rights action pursuant to the Rooker-Feldman doctrine because they are inextricably intertwined with state court decisions. It also appears based on the facts alleged that the Court must abstain from adjudicating issues regarding the custody proceedings pursuant to Younger to the extent there are ongoing state judicial proceedings implicating important state interests because there is adequate opportunity in the state proceedings to raise these questions.

## V. PLAINTIFF'S CLAIM FOR UNLAWFUL ARREST.

Plaintiff alleges in Claims 1, 4, and 5 that she was unlawfully arrested by SMPD officers. The Fourth Amendment prohibits arrests without probable cause or other justification and provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the

12

persons or things to be seized." U.S. Constitution, amend. IV. A claim for unlawful arrest is cognizable when the arrest is alleged to have been made without probable cause. Dubner v. City & County of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007)).

Based on the factual allegations in the Complaint, it appears that Plaintiff was outside of her apartment unit when she was initially detained and ultimately arrested by SMPD officers. The basis for the arrest is unclear. Plaintiff must plead additional facts demonstrating that her arrest was unlawful, including facts regarding why the officers were at her apartment building, why she was arrested, and the circumstances surrounding the arrest.

**VI.   PLAINTIFF'S CLAIM FOR VIOLATION OF DUE PROCESS.**

In Claim 2, Plaintiff also alleges a due process violation based on SMPD officers' investigation of "a child abuse suspicion report at the plaintiff's home" without a warrant and without her consent. (Complaint at 24.) However, this not properly brought as a separate due process claim. Rather, Plaintiff's allegations are rooted in the Fourth Amendment, as discussed above. See Albright v. Oliver, 510 U.S. 266, 273–74 (1994) (noting the Fourth Amendment was drafted to address the matter of pretrial deprivations of liberty and finding that claim arising out of arrest and prosecution lacking probable cause must be brought under Fourth Amendment and not as substantive due process claim); see also Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

Accordingly, Plaintiff's due process claim is subject to dismissal.

## VII. PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE AND ILLEGAL SEARCH AND SEIZURE.

In Claim 3, Plaintiff alleges that SMPD Officers Cochran, Jauregui, Glaser, Garcia, and Diaz used excessive force in violation of the Fourth Amendment. Specifically, Plaintiff claims: "When SMPD presented with 5 officers, the show of force revealed their intent by their unwarranted presence and numbers, to contact the plaintiff . . . ." The officers "gave orders," "effectively conducted an arrest," and "questioned the plaintiff against her consent." (Complaint at 25.)

Plaintiff's excessive force claim is analyzed under the Fourth Amendment's prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 294 (1989); accord Young v. County of Los Angeles, 655 F.3d 1156, 1161 (9th Cir. 2011). The Fourth Amendment does not prohibit the use of reasonable force. Tatum v. City & County of San Francisco, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. In determining whether an officer's conduct is objectively unreasonable, courts must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003). Here, Plaintiff has not pleaded sufficient facts to support an excessive force claim. In fact, Plaintiff does not allege that the officers used any physical force on her at all, much less force that was excessive in the circumstances. Accordingly, Plaintiff's excessive force claim is subject to dismissal.

## VIII. PLAINTIFF'S CLAIM FOR CONSPIRACY.

In Claim 6, Plaintiff attempts to state a conspiracy claim against SMPD Officers Cochran, Jauregui, Glaser, Garcia, and Diaz. Plaintiff states: "When none of the 5 officers at the scene acted to protect the rights of the plaintiff, they became complicit in a conspiracy against the plaintiff to deprive her of liberty by arresting her under false

charge[s], denying her of due process rights by refusing to acknowledge their necessity for a warrant to be on the property under the circumstances, and denying her equal protection under the law . . . ." (Complaint at 28.)

Plaintiff fails to allege facts sufficient to state a conspiracy claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Moss v. U.S. Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009). In the context of conspiracy claims brought pursuant to § 1983, a plaintiff must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). A claim of conspiracy requires a plaintiff to "demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." Mendocino Envt'l Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted). In addition, a plaintiff must show an "actual deprivation of constitutional rights." Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989)). Here, Plaintiff has failed to do so, and her conspiracy claim is subject to dismissal.

### IX. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION.

In Claim 8, Plaintiff attempts to state a claim for malicious prosecution against SMPD Officers Cochran, Jauregui, Glaser, Garcia, and Diaz. Specifically, Plaintiff alleges that "SMPD falsely commenced judicial proceedings against the plaintiff by making a false arrest . . . ." (Complaint at 30.) To maintain a § 1983 action for malicious prosecution, a plaintiff must show that "the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her [a] specific constitutional right." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995); see also Lassiter v. City of Bremerton, 556 F.3d 1049, 1054–55 (9th Cir. 2009) ("[P]robable cause is an absolute defense to malicious prosecution."). However, Plaintiff appears to allege that she was never prosecuted. (See Complaint at 26, 27.) In these circumstances, Plaintiff cannot maintain a claim for malicious prosecution, and this claim is subject to dismissal.

*************

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, she is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document.  The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if she fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: October 19, 2016                          /s/ John E. McDermott
                                                                            JOHN E. MCDERMOTT
                                                    UNITED STATES MAGISTRATE JUDGE